UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARITTE FUNCHES, ) | CV-N-05-0174-LRH (VPC) |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| E.K. MCDANIEL, ) | |
| Defendants. ) | August 2, 2006 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#28). Plaintiff opposed (#30), and defendants replied (#31). The court has thoroughly reviewed the record and the motion and recommends that defendants' motion for summary judgment (#28) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff Marritte Funches ("plaintiff") is a prisoner at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#15). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging prison officials violated his Eighth Amendment right against cruel and unusual punishment by failing to provide him with adequate medical treatment.[1] *Id*. Plaintiff names as defendants E.K. McDaniel, ESP warden; Dr. Steven

---

[1] Plaintiff's complaint purportedly states a Fourteenth Amendment claim as well; however, all facts he alleges appear to constitute Eighth Amendment claims (#15).

MacArthur, ESP medical director; Jane Does 1-2, ESP medical staff; and ESP correctional officer John Doe.[2] *Id*.

In count I of the first amended complaint, plaintiff alleges that on or about August 9, 2004, he was held in the prison infirmary against his will (#15). Plaintiff claims that prison medical staff subjected him to painful treatments including blood work and intravenous administration of antibiotics that were unnecessary and administered against his will and that Dr. MacArthur told him that if he did not submit to these treatments, he would be denied any further care. *Id*.

In count II, plaintiff alleges that from September through November 2004, defendants ignored plaintiff's repeated requests for medical treatment (#15).[3] Plaintiff argues that he needed to be seen by an ear nose and throat specialist ("ENT"), but defendants refused. *Id*. Plaintiff also claims that though defendant Dr. MacArthur treated him with antibiotics for recurring urinary infections, the pain and infections always returned (#1, medical kite attached thereto, dated 2/17/05). Plaintiff seeks compensatory and punitive damages as well was injunctive relief (#15).

Defendants move for summary judgment (#28).

## II. DISCUSSION & ANALYSIS

**A. Discussion**

**1. Summary judgment**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agriculture*, 18 F.3d 1468, 1471 (9th Cir. 1994). In deciding whether to grant summary judgment, the court must view the evidence

---

[2] Plaintiff filed his original complaint (#1) and motion for preliminary injunction (#2) on March 25, 2005. Plaintiff filed his first amended complaint on August 8, 2005 (#15). The District Court denied plaintiff's motion for preliminary injunction on December 9, 2005 (#16, 20).

[3] The medical kites and grievance forms are attached to the plaintiff's original complaint (#1) and are referenced by date.

2

and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(C). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied,* 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Only evidence which might be admissible at trial may be considered by the court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988). Evidence without a proper foundation cannot support a motion for summary judgment. *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987).

Material facts are facts that might affect the outcome of the case; the court determines materiality by reference to the substantive law that controls the case. *Anderson*, 477 U.S. at 248. Disputes over irrelevant or unnecessary facts should not be considered. *Id*. If, given the evidence submitted, a reasonable jury could hold for the nonmoving party, the dispute over material fact

is "genuine." *Id*. Where there is a complete failure of proof on an essential element of the case for the nonmoving party, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**2. Deliberate indifference and sufficiently serious harm**

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). In *Farmer v. Brennan*, the Supreme Court reiterated the standards for prevailing on an Eighth Amendment claim. 511 U.S. 825, 828 (1994). The court once again stated that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.*, *citing Helling v. McKinney*, 509 U.S. 25 (1993), *Wilson v. Seiter*, 501 U.S. 294 (1991), and *Estelle*, 429 U.S. 97. To establish an Eighth Amendment violation, a plaintiff's case must satisfy an objective standard -- that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard -- deliberate indifference. *See Wilson*, 501 U.S. at 297-304; *see also Farmer*, 511 U.S. at 834.

The subjective standard of deliberate indifference for Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, *quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. It is the equivalent of recklessly disregarding a substantial risk of serious harm to the inmate. *Id.*

"[D]eliberate indifference to a prisoner's serious illness or injury" is a violation of the Eighth Amendment prohibition against cruel and unusual punishment. *Estelle*, 429 U.S. at 105.

4

In order to prove deliberate indifference, plaintiff must show that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).  Indifference may be manifested by prison staff intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.  *Estelle*, 429 U.S. at 104-05.

Mere negligence on the part of prison medical staff is not sufficient to prove deliberate indifference.  *Id*.  "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established."  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds in WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  Prison medical staff does not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with the opinion of the inmate-patient.  *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Failure to allow every requested visit to a doctor does not constitute medical indifference where the evidence shows that an inmate received medical treatment.  *See Estelle*, 429 U.S. at 106-07.

**3. Requirement of personal participation and respondeat superior**

"Liability under section 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for constitutional violations of [her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under section 1983."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Mabe v. San Bernardino County*, 237 F.3d 1101, 1109 (9th Cir. 2001).

Because there is no respondeat superior liability under § 1983, liability of a supervisor requires an affirmative act, or failure to act where there is an affirmative duty. *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997). For example, in *Harris* the court held that FBI supervisors were liable for the shooting of a defendant where the supervisors were alleged to have developed a plan that resulted in the shooting. *Id*. However, the court was careful to note that this was not liability under a theory of respondeat superior. *Id*. Rather, the supervisors were directly liable because of their affirmative acts. *Id*. "A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc) (citation omitted). "'The requisite causal connection can be established . . . by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id*. at 1447, *quoting Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978). The court noted that this is not a form of vicarious liability, but is direct liability. *Id*.

**4. Persons amenable to suit under § 1983**

State officials sued in their official capacity for damages are not persons for purposes of § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Will v. Michigan Dep't. Of State Police*, 491 U.S. 58, 71 (1989). State officials sued in their official capacity for injunctive relief, however, are persons for purposes of § 1983. *See Will*, 491 U.S. at 71, n.10.

State officials sued in their personal capacity for monetary damages are persons for purposes of § 1983. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). Liability in a personal capacity suit can be demonstrated by showing that the official caused the alleged constitutional injury.

6

*Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The official in a personal-capacity suit may, depending on the facts, be able to establish immunity from claims for damages. *See id*. at 166-67.

### 5. Punitive damages

Punitive damages are available under §1983. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991); *Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th Cir. 1993). State officials sued in their official capacity are . . . immune from punitive damages. *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). Punitive damages are awarded at the jury's discretion. *See Smith v. Wade*, 461 U.S. 30, 54 (1983); *Woods v. Graphic Communications,* 925 F.2d 1195, 1206 (9th Cir. 1991). The jury must find either that the defendant acted with an evil motive or demonstrated reckless indifference to the constitutional rights of the plaintiff. *See Smith*, 461 U.S. at 56; *Mitchell,* 75 F.3d at 527 n.7.

### B. Analysis

Defendants argue that plaintiff has failed to show that they were deliberately indifferent to his serious medical needs (#28). Defendants assert that they were responsive and timely in addressing plaintiff's medical concerns. *Id.* Defendants contend that plaintiff's medical kites and records show that they responded appropriately to plaintiff's complaints regarding ear pain and pain in his kidney area. *Id.* Defendants point out that plaintiff does not allege that defendant McDaniel personally participated in his treatment. *Id.* Defendants argue that they are not amenable to suit for damages in their official capacities and also that they are entitled to qualified immunity. *Id*. Finally, defendants assert that plaintiff fails to allege the malicious, wanton, or oppressive conduct necessary to support a claim for punitive damages. *Id.*

Plaintiff argues that he did not receive proper medical treatment by Dr. MacArthur (#30). Plaintiff asserts that the prescribed antibiotics have not eased his constant pain (#15; #28 Ex. A,

medical kites attached thereto, bates stamped A042). Plaintiff alleges that Dr. MacArthur was deliberately indifferent by ignoring plaintiff's many requests for further diagnosis and treatment (#30, #28, Ex. A, A042-A044).

Plaintiff and defendants offer medical kites and progress notes that reflect the following course of treatment. Dr. MacArthur examined plaintiff on August 3, 2004 for pain and swelling in his left ear and jaw. *Id.,* Ex. A, progress notes attached thereto bates stamped A025. Dr. MacArthur attests that after consultation with an ENT, plaintiff was admitted to the infirmary on August 9, 2004 in order to receive antibiotics intravenously (#28, Ex. C, affidavit of Dr. MacArthur). Dr. MacArthur also states plaintiff was placed in his own medical cell in the infirmary because he previously had had an altercation with another inmate. *Id*. Blood work performed on plaintiff on September 7, 2004 was normal (#28, Ex. A, A083-A084).

Next, plaintiff complained of pain and requested that he see an ENT for his throat, as well as a kidney specialist because he believed his pain might signal kidney stones (#1, medical kites dated 9/16/04, 9/22/04, 9/25/04, 10/01/04, 11/03/04). Dr. MacArthur responded on the forms that plaintiff's recent blood work was normal (9/25/04), that the doctor had not identified any medical problems to treat (11/03/04), that plaintiff's life was not at risk (9/22/04) and that over-the-counter medicines in the canteen were all that was available to plaintiff for chronic pain (9/16/04). Plaintiff then pursued a grievance requesting further medical care (#1, grievances attached thereto, dated 9/19/04, 10/11/01, 10/28/04). Dr. MacArthur stated that plaintiff's life was not in danger, and plaintiff was advised that he could schedule another visit at his own expense. *Id*.

In January 2005, plaintiff submitted three medical kites about the same complaints (#1, medical kites dated 1/8/05, 1/12/05, 1/19/05). Dr. MacArthur responded that after plaintiff's initial January complaint, his urine was tested and he was treated for a minor infection (#1,

8

1   medical kites dated 1/8/05, 1/12/05). On January 15, 2005, plaintiff also filed an inmate request
2   form with defendant Warden McDaniel (#1, inmate request form attached thereto, dated 1/15/05).
3   The warden responded that this issue was between plaintiff and the doctor. *Id*. Plaintiff
4   submitted an inmate interview request to the warden on January 24, advancing similar complaints
5   and suggesting that Dr. MacArthur is racist and prejudiced against Muslims (#1, inmate interview
6   request attached thereto, dated 1/24/05). The warden responded that Dr. MacArthur is capable
7   of making medical decisions. *Id*.

9       On February 17, 2005, plaintiff submitted a medical kite claiming that the doctor
10  continued to give him antibiotics for recurring urinary infections, but the pain and infections
11  always returned (#1, medical kite attached thereto, dated 2/17/05). Dr. MacArthur clarified in his
12  response that he gave plaintiff antibiotics once to treat a trace of protein in plaintiff's urine and
13  that no further action was required. *Id*.

15      In April 2005, a CT scan of plaintiff's abdomen and pelvis revealed a lesion too small to
16  characterize that was deemed a probable cyst (#28, Ex. A, A085). The scan also showed no
17  evidence of acute inflammatory disease. *Id.* In May 2005, Dr. MacArthur consulted a urologist
18  regarding plaintiff's urinalysis who stated that plaintiff's urinary tract was normal (#28, Ex. A,
19  A081; Ex. C).

21      As an initial matter, the court finds that because plaintiff does not allege that defendant
22  McDaniel personally participated in his medical treatment (*see* #15), McDaniel cannot be liable
23  for any alleged Eighth Amendment violations. *Taylor,* 880 F.2d at 1045. Turning to Dr.
24  MacArthur, the court finds that he did not act with deliberate indifference to plaintiff's medical
25  needs. *See Wilson*, U.S. at 297-304; *see also Farmer*, 511 U.S. at 834. Even assuming,
26  *arguendo*, that plaintiff had serious medical needs, Dr. MacArthur responded in a timely manner

to plaintiff's complaints (*See generally* #28, Ex. A). Medical staff has examined and tested plaintiff, including completing blood work and urinalysis, and administering a CT scan, and has treated plaintiff when necessary. *Id*. According to Dr. MacArthur's responses, plaintiff has no serious medical problems requiring treatment (#1, medical kites attached thereto). Dr. MacArthur has not violated the Eighth Amendment simply because plaintiff disagrees with his opinions concerning plaintiff's medical treatment. *Franklin*, 662 F.2d at 1344. Plaintiff has not demonstrated that he was deprived of necessary medical care. *Farmer*, 511 U.S. at 298. Accordingly, defendants' motion for summary judgment is granted. Thus, the court need not consider defendants' other arguments.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff has not demonstrated that defendants violated his Eighth Amendment rights with respect to plaintiff's medical treatment. As such, the court recommends that defendants' motion for summary judgment (#28) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#28) be **GRANTED**.

**DATED:** August 1, 2006.

*/s/ Valerie P. Cooke*
_____
**UNITED STATES MAGISTRATE JUDGE**